BILAL A. ESSAYLI
United States Attorney
ROBERT J. KEENAN (Bar No. 151094)
Assistant United States Attorney
  UNITED STATES ATTORNEY'S OFFICE
  411 W. Fourth Street
  Suite 8000
  Santa Ana, California 92701
  Telephone: (714) 338-3597
  Facsimile: (714) 338-3708
  E-Mail:     rob.keenan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:24-00527-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S SUPPLEMENTAL SENTENCING BRIEF |
| v. | |
| TREVOR JAMES KIRK, | [Fed. R. Crim. P. 32(f)(1)] |
| Defendant. | DATE:      June 2, 2025 |
| | TIME:      11:00 a.m. |
| | PLACE:     FSCH, Courtroom 10-A |
| | EST:       20 minutes |

**INTRODUCTION**

The Government hereby submits this Supplemental Sentencing Brief in light of the Court's Order of May 27, 2025. (<u>See</u> CR 103.)  The sole issue to be addressed at the upcoming hearing is sentencing.

**SENTENCING RECOMMENDATION**

The Government maintains that the sentence stipulated to in the now-defunct Post-Trial Agreement is a reasonable disposition in light of the sentencing factors set forth in § 3553(a).[1]  However, in light of the Court's determination that "straight probation" is inadequate (<u>see</u> Order at 6-7), the Government hereby proposes the following alternative sentence to address the Court's concerns:

1.  a $25 special assessment;

2.  a <u>$5,000 fine</u>, on a payment schedule to be determined by the Court;

3.  a one-year term of probation, with the same conditions previously recommended by the parties,[2] as well as two new conditions:

    (a) defendant shall serve <u>three months home</u>

---

[1]  Consistent with Fed. R. Crim. P. 11(c)(1)(C), Paragraph 2 of the Post-Trial Agreement provides "if the Court determines that it will not accept this Agreement . . . , this Agreement will, . . . , be rendered null and void and both defendant and the USAO will be relieved of their obligations under this Agreement." (<u>See</u> CR 82 at 1-2.)

[2]  Paragraph 17 of the Post-Trial Agreement included the following conditions of probation: (a) defendant shall comply with the rules and regulations of the United States Probation & Pretrial Services Office and Second Amended General Order 20-04; (b) defendant shall not commit any violation of local, state, or federal law or ordinance, (c) during the period of probation, defendant shall pay any criminal debt (<u>e.g.</u>, restitution) in accordance with the judgment's order pertaining to such payment; and (d) defendant shall cooperate in the collection of a DNA sample from the defendant.

1     <u>detention</u>; and (b) defendant shall perform

2     <u>200 hours of community service</u>, as approved

3     by the U.S. Probation Office; and

4     4.   restitution in amount to be determined on a

5     later date, if the victim provides the

6     Government with supporting evidence.

7     As discussed below, the Government submits that this sentence is

8 "sufficient, but not greater than necessary" to achieve all of the

9 statutory goals of sentencing, including, as the Court emphasized,

10 the need to account for defendant's "breach of duty" and the "manner"

11 of that breach. (Order at 6-7.) The Government continues to believe

12 that any sentence which includes a term of imprisonment is

13 unreasonable in light of the nature and circumstances of the offense

14 and defendant's personal history and characteristics, and

15 imprisonment is unnecessary here to adequately reflect the

16 seriousness of defendant's offense (when properly assessed), to

17 promote respect for the law, and to provide just punishment for the

18 offense, to afford adequate deterrence, or to protect the public from

19 further crimes of the defendant.

20     As to the nature and circumstances of the offense, the

21 Government fully addressed these facts at the last hearing. In

22 summary, the Government's recommended sentence is reasonable in light

23 of the following: (1) the low level of force used by defendant

24 compared to typical excessive-force cases; (2) the relatively minor

25 nature of the victim's injuries, as detailed in the Government's

26 Sentencing Brief (<u>see</u> CR 92 at 11-14); (3) the circumstances of the

27 case — <u>i.e.</u>, that defendant was responding to a potential armed

28 robbery ("211 now"), police dispatches advised that two suspects were

1   "fighting Loss-Prevention" employees; (4) another deputy reported,

2   moments before defendant's arrival, that one suspect (D.B.) was

3   "uncooperative" (id. at 15); and (5) the victim's own wrongful

4   conduct "contributed significantly to provoking the offense behavior"

5   (see USSG § 5K2.10 (Victim's Conduct (Policy Statement)), including

6   (1) J.H.'s use of her right hand/arm to swat at defendant's hands as

7   he approached and attempted to restrain her,[3] coupled with her

8   simultaneously screaming at him, "No, you can't touch me!";

9   (2) J.H.'s continued resistance and protestations as defendant moved

10  her toward a patrol car and attempted to gain control of her, in the

11  few seconds before he forcibly threw her to the ground; and

12  (3) J.H.'s continued verbal and physical resistance to being

13  handcuffed after being forced to the ground.[4]

---

14

15  [3] The Victim's Amended Statement claims that this is a new fact that the Government has just raised for the first time. (See CR 100.) That is incorrect. The Government acknowledged J.H.'s swatting movement in its opening statement, although we described it there by saying J.H. "pulled her arm away and swiped away at the defendant's hold of her arm." (See CR 58 at 9.) With similar wording, the Government also acknowledged J.H.'s swatting movement in its opposition to defendant's motion for acquittal or new trial. (See CR 68 at 5 ("J.H. reactively pulled her arm away and attempted to swipe away defendant's grasp."). The video evidence also shows J.H.'s swatting movement. (See Ex. "A" at 5-6.)

16

17

18

19

20

21  [4] For examples of J.H.'s resistance, see the Government's Exhibit "A" hereto, which provides screenshots from certain videos. The first three pages of Exhibit "A" show J.H.'s conduct inside the store, which led to employees calling 911 (i.e., J.H. assaulting an employee by spitting directly into his face). That video was not introduced into evidence at trial (apparently because it was not relevant to what **defendant** knew of J.H.'s conduct), but it is probative of whether **J.H.** understood why defendant approached her to restrain and cuff her along with D.B. J.H.'s understanding became relevant at trial because much was made of the fact that defendant, as he approached J.H., did not say anything to her to explain why he was trying to physically restrain her. However, given that she had just assaulted a store employee a few minutes before and then saw police detain and cuff D.B., J.H. had an ample basis for understanding why defendant was trying to detain and restrain her. Also, no request for a limiting instruction appears to have been made

22

23

24

25

26

27

28                                          *(footnote cont'd on next page)*

3

As to defendant's personal history and characteristics, it bears noting that defendant has no prior criminal convictions. Moreover, the "breach of duty" to the public occurred in a physical altercation with J.H. that lasted approximately 2-3 minutes (much of that extended by J.H.'s acts of resistance), and that conduct must be placed in context —— namely, defendant's voluntary decision to wear a badge and serve the public as a deputy sheriff for approximately three years, during which he engaged in the dangerous and difficult task of enforcing the law on behalf of the public.

For the reasons explained above regarding the nature and circumstances of the offense, defendant's conduct is not as serious as other, more typical excessive-force cases. Thus, on the facts of this case, the Government's recommended sentence is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Likewise, due to the nature of the offense and defendant's service as a law enforcement officer and lack of prior convictions, the recommended sentence is sufficient to protect the public from further crimes of the defendant.

Finally, although the sentence must afford adequate deterrence to criminal conduct, the segment of the public to whom any such deterrent message is to be delivered (i.e., law enforcement officers) is thankfully a generally law-abiding group. Any conviction of a police officer for misconduct while on duty is typically well

---

regarding J.H.'s videotaped claims of innocence during her encounter with defendant, the truth of which the jury may have simply assumed in the absence of contrary evidence.

4

publicized.  Thus, the Government's recommended sentence is sufficient to afford adequate deterrence.

DATED: May 29, 2025.                    BILAL A. ESSAYLI
                                        United States Attorney


                                            /s/ R.J.K.
                                        _____
                                        ROBERT J. KEENAN
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**Exhibit "A"**

### U.S. v. Trevor Kirk --- Screenshots from Store's Interior Surveillance Video

After a few minutes of argument with store staffers (including Loss Prevention employees), J.H.'s associate (D.B., shown in the blue wide-brimmed hat) displays combativeness with one employee.:



The argument and posturing continues between D.B. and two employees:



J.H. joins the argument between D.B. and store employees.



The argument continues here and appears to grow more heated:



J.H. walks by one employee and "shoulder checks" him with her right shoulder:



Not yet done with her acts of physical provocation, J.H. turns and "shoulder checks" him with her left shoulder, bumping the employee to his left and off balance:



And J.H. still isn't done with her assaultive conduct.  Here, she turns on the same employee to confront him again:



And then, J.H. pulls her face mask down (Photo 1), closes within inches of the employee and **spits directly into his face** (Photo 2), and he wipes her spit away (Photo 3):



### <u>Screenshots from Store's Exterior Surveillance & Defendant's BWC Videos</u>

After handcuffing D.B., defendant approaches J.H. to detain her:



Here's J.H. with her right arm down, standing square to KIRK:

   

And then, J.H. raises her right arm, brings her left arm down and back, and steps backward while turning to her left:

   

5

Here, J.H. makes a "swatting" or "swiping" movement with her right arm:

 

These show further shots of the completed swatting movement, with a full "blading" turn:

  

 

6

## Screenshots from Bystander Video

**At time-mark 2:03** (Kirk commences takedown maneuver to force J.H. to ground.):





**At time-mark 2:10** (J.H. appears to struggle off the ground, and Kirk attempts to keep her down, while telling her to "Get on the ground."):



**At time-mark 2:11** (Kirk uses hands on back of J.H. to force her back to the ground.):



**At time-mark 2:20** (The scene just after bystander refocuses camera.):



**At time-mark 2:26**  (reports "fight" to dispatcher and moves knee away from J.H.'s neck):



**At time-mark 2:27** (How does J.H. respond?  She begins to move up off the ground and
continues resistance and disputes accuracy of his report that she's "fighting" with him.):



**At time-mark 2:28** (Deputy Kirk finishes reporting fight to dispatcher and uses right hand to
push J.H.'s head away from him and forces her right arm out to get her in a prone position.):



**At time-mark 2:29**  (Here, Kirk tries to get J.H. to rollover in a prone position by extending her right arm and using knees to back of her neck and ribs.  But J.H. continues to resist because she doesn't want to rollover and be handcuffed.):



**At time-mark 2:29**  (J.H. is still resisting, keeps hips perpendicular to the ground, and swings right leg back to maintain balance and resistance.):



**At time-mark 2:30 – 2:32**  (Kirk lets up on left knee pressure, and J.H. immediately tries to come off the ground again.  Kirk reaches for pepper spray.):



**At time-mark 2:34**  (After struggling with J.H. on ground for approximately 28 seconds, Kirk deploys pepper spray.  Some of the spray appears to hit top and side of J.H.'s head and glances off to the ground.  J.H. moves head to avoid.):



**At time-mark 2:38**  (Kirk holsters his pepper spray cannister.):



**At time-mark 2:42 -  2:43**  (Kirk grabs J.H.'s right wrist in attempt to force her right arm behind her back and to place cuffs on right wrist.  But J.H. continues to resist.):



13

**At time-mark 2:44** (J.H. is still resisting Kirk's effort to bring her right arm behind her back
and cuff her right wrist.):



**At time-mark 2:51** (After seven more seconds have elapsed, and J.H. continued to
physically resist being cuffed, Kirk is finally in a position to reach for handcuffs and put
them on J.H.'s right wrist.):



**At time-mark 2:52**  (Kirk starts to slap cuffs on J.H.'s right wrist, but J.H. resists again by pulling or retracting her right wrist to avoid that.  This causes Kirk to lose balance momentarily and have to use right hand to brace himself.):



**At time-mark 2:55**  (At this point, it's been about 14 seconds of Kirk trying to handcuff J.H.'s right hand behind her back, and it still hasn't happened due to J.H.'s resistance.):



15

**At time-mark 3:00** (This is approximately the point where Kirk finally is able to cuff J.H.'s right wrist. Note that, due to her physical resistance, J.H. has turned around almost 180 degrees from the position she was when the bystander video first shows Kirk struggling with her on the ground. Instead of facing toward the bystander's cellphone, J.H. is now facing away from it.):



**At time-mark 3:07 – 3:08** (The struggle is not yet over. Here, J.H. is twisting up and to her right, resisting Kirk's effort to get her to roll over into a prone position. This causes Kirk to threaten that she'll get sprayed again if she doesn't give him her left wrist for cuffing.):

 

**At time-mark 3:12**  (J.H. continues to resist having her left wrist cuffed.):



**At time-mark 3:14**  (J.H. is still resisting being cuffed, and Kirk has to use handcuffs to forcibly pull her right arm behind her back again.):



**At time-mark 3:20**  (Kirk is finally able to cuff J.H.'s left wrist.):



**At time-mark 3:25 – 3:35**  (Kirk is ready to assist J.H. off the ground while D.B. asks how she's doing, and Kirk then assists J.H. to her feet.):



18

1

## CERTIFICATE OF SERVICE

2

3     I am a citizen of the United States and a resident of Orange
County, California.  I am over 18 years of age, and I am not a party
to the above-entitled action.  My business address is the United
States Attorney's Office, Ronald Reagan Federal Building and United
States Courthouse, 411 West Fourth Street, Suite 8000, Santa Ana,
California 92701.

4

5

6     On this date, **May 29, 2025,** I served a copy of the attached
document, **GOVERNMENT'S SUPPLEMENTAL SENTENCING BRIEF**, on the assigned
U.S. Probation Officer by e-mailing it to the following e-mail
address:

7

8

9          **Shani_Kochav@cacp.uscourts.gov**

10

11     I declare under penalty of perjury that the foregoing is true
and correct.  This declaration is executed on this day, **May 29, 2025,**
at Santa Ana, California.

12

13

14                              /s/ R.J.K.
                          Robert J. Keenan

15

16

17

18

19

20

21

22

23

24

25

26

27

28